# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | 8:08CR382 |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| **REYNALDO DELEON,** ) | RECOMMENDATION |
| ) | |
| **Defendant.** ) | |

This matter is before the court on the motion to suppress filed by defendant Reynaldo Deleon (Deleon). **See** Filing No. 22. Deleon is charged in the Indictment with multiple counts, including possession with intent to distribute less than 50 grams of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1), and using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). **See** Filing No. 10 - Indictment. Deleon seeks to suppress all evidence and statements derived from the arrest and search of Deleon and his vehicle on September 4, 2008. **See** Filing No. 22.

On December 22, 2008, the court held an evidentiary hearing on Deleon's motion. Deleon was present with his counsel Glenn Shapiro. Assistant United States Attorney Justin Dawson represented the United States. During the hearing, the court heard the testimony of Omaha Police Department (OPD) Sergeant Mark Noonan (Sergeant Noonan), OPD Officer Robert Branch, Jr. (Officer Branch), and OPD Officer Jeffrey Hunter (Officer Hunter). No exhibits were offered during the hearing. A transcript (TR.) of the hearing was filed on December 26, 2008. **See** Filing No. 31 - Transcript. Deleon filed a pre-hearing brief in support of his motion. **See** Filing No. 23. On January 2, 2009, the government filed a post-hearing brief opposing the motion. **See** Filing No 34. Deleon had an opportunity to file a response to the government's brief by January 9, 2009, but did not. Deleon's motion was taken under advisement on January 9, 2009.

## FINDINGS OF FACT

Sergeant Noonan is employed with the OPD narcotics unit and has 14 years of experience in narcotics investigation (TR. 3). On September 4, 2008, in response to anonymous citizen complaints about drug activity, Sergeant Noonan and a team of officers conducted surveillance on the La Luna Bar, located at 20th and Q Streets in Omaha, Nebraska (TR. 4-5). At approximately 10:00 p.m., Sergeant Noonan was parked in an unmarked vehicle directly across the street from the front entrance of the bar (TR. 4-5). Officers Branch and Hunter, members of Sergeant Noonan's OPD narcotics unit, were parked around the corner from Sergeant Noonan near 20th and Q Streets conducting surveillance on El Bohemio Bar (TR. 5-6).

Sergeant Noonan observed a red Chevy Impala (Impala) drive up to the front of La Luna Bar and park straddling the sidewalk and street, in violation of state statute and city ordinance (TR. 6). Two white males exited the Impala and entered the bar (TR. 6). After the two men entered the bar, Sergeant Noonan noticed a pattern of traffic, which consisted of a vehicle stopping at the bar, an individual entering the bar, returning to the vehicle two to three minutes later, and then the vehicle leaving (TR. 7). This pattern led Sergeant Noonan to believe drug activity was occurring (TR. 7). After observing a white vehicle with one headlight follow the pattern, Sergeant Noonan ordered that vehicle to be stopped (TR. 7). The individual in the white vehicle who had entered and exited the bar was arrested with three baggies of cocaine; however, the individual did not inform the officers where he got the drugs (TR. 8,13).

In addition to the traffic pattern, Sergeant Noonan also observed Deleon, formerly the driver of the Impala, and Jonathan Uriel (Uriel), formerly the passenger of the Impala, conduct separate hand-to-hand exchanges with other unidentified individuals (TR. 8-9). Sergeant Noonan was unable to determine exactly what items were exchanged; however, in the exchange involving Deleon, the person receiving the item from Deleon held it up to the light then put it in a pocket (TR. 9). On a separate occasion, Sergeant Noonan also observed Deleon exiting the bar and shouting "I'm rich" (TR. 11). Based on the totality of behavior observed, Sergeant Noonan believed drugs were being sold by Deleon and Uriel from La Luna Bar (TR. 12).

At approximately 11:30 p.m., Deleon and Uriel left La Luna Bar and entered the Impala (TR. 10). Sergeant Noonan directed Officers Branch and Hunter to make contact with the occupants of the Impala to investigate the parking violation and the suspected narcotics activity (TR. 11, 15). Officers Branch and Hunter blocked the Impala with their undercover vehicle and approached the vehicle (TR. 11, 20). Officers Branch and Hunter were wearing OPD raid vests with badges and markings saying "police" (TR. 20, 28).

Officer Hunter approached the driver side and Officer Branch approached the passenger side of the Impala (TR. 11). Officers Branch and Hunter gave loud verbal commands to Deleon and Uriel to show their hands (TR. 21). Officer Hunter observed Deleon, who was sitting in the driver seat, moving his hand near his waist and the center console of the Impala (TR. 28). Officer Hunter commanded Deleon to put his hands up multiple times and tried unsuccessfully to open the car door (TR. 28-29). Officer Hunter drew his weapon and commanded Deleon to show his hands (TR. 28-29). Ultimately, Deleon complied with the command to raise his hands and unlocked the door (TR. 29). Officer Hunter removed Deleon from the vehicle, handcuffed him, and patted him down (TR. 29). Uriel also initially failed to raise his arms on command (TR. 21). Officer Branch removed Uriel from the vehicle and conducted a pat-down, discovering a meth pipe protruding from Uriel's front right pant pocket (TR. 16, 21-22). Officer Branch handcuffed Uriel and placed him under arrest (TR. 23).

After discovering the pipe located on Uriel and because of furtive movements observed by Officer Hunter, Sergeant Noonan ordered the vehicle to be searched (TR. 17). The search of the Impala yielded contraband including a scale and substances believed to be methamphetamine and cocaine found in the console area (TR. 17, 30). At that time, Officer Branch placed Deleon under arrest and conducted a search of him, locating a handgun in Deleon's waistband (TR. 18, 24).

## LEGAL ANALYSIS

**A.   Initial Stop and Detention**

Deleon asserts his arrest, the searches of his person, and the subsequent search of the Impala lacked probable cause and were violative of his rights under the Fourth

Amendment. **See** Filing No. 22 Motion p. 1. Deleon states that because none of the investigating officers were able to identify contraband or cash in the observed hand-exchanges between Deleon and unknown individuals, the searches and seizure were unreasonable, and therefore unlawful. **See** Filing No. 23 - Brief p. 3. However, a law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). An officer's subjective motivations do not affect the reasonableness of a traffic stop based on the violation of the traffic laws. *Long*, 532 F.3d at 795; *United States v. Chatman*, 119 F.3d 1335, 1340 (8th Cir. 1997) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.") (internal quotation omitted). Additionally, "[t]o justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, No. 07-1122, — S. Ct. —, 2009 WL 160434, at *3 (Jan. 26, 2009); **see** *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008).

Here, Sergeant Noonan testified that in addition to suspecting drug activity afoot, he directed Officers Branch and Hunter to approach the Impala occupied by Deleon and Uriel to investigate an alleged traffic violation. At the time the Impala arrived at La Luna Bar, Sergeant Noonan observed the vehicle parked straddling the curb and sidewalk, in violation of Omaha City Ordinance 36-136. Omaha City Ordinance 36-136 states, "It shall be unlawful for any person in the operation of a motor vehicle to drive or park a motor vehicle along, upon or across any curb or sidewalk except at a duly authorized and established crossing." The court credits Sergeant Noonan's testimony regarding this violation and concludes there was probable cause to initially detain the vehicle and make contact with the occupants.

In the alternative, the officers initial contact with the occupants of the Impala was justified as an investigative detention. An investigative detention is a seizure of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity. **See** *Terry v. Ohio*, 392 U.S. 1

(1968); *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007). When evaluating "each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing" the court "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (**citing** *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity." *United States v. Briley*, 319 F.3d 360, 364 (8th Cir. 2003). "A **Terry** stop may also be justified if an officer has reasonable suspicion that a crime has previously been committed by an individual." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). "There is no requirement that there be a traffic violation." *United States v. Jacobsen*, 391 F.3d 904, 907 (8th Cir. 2004). Based on the observations and experience of Sergeant Noonan, the court finds the investigating officers had reasonable articulable suspicion that Deleon was engaged in illegal drug activity and could briefly detain Deleon for investigation.

In the instant case, Sergeant Noonan observed a traffic violation <u>and</u> the officers had an objectively reasonable belief that illegal drug activity was afoot when they approached the Impala. They gave commands for Deleon and Uriel to raise their hands, which Deleon and Uriel ignored. Officer Hunter also observed Deleon making furtive movements near his waist and the center console of the vehicle. Such suspicious behavior warranted the removal from the Impala and pat-down of both Deleon and Uriel as a safety precaution. Therefore, the court finds the initial pat-down of Deleon was reasonable and lawful.

### B.     Search of the Vehicle

The initial pat-down of Uriel yielded a meth pipe and resulted in Uriel's arrest. Searches incident to arrest are *per se* reasonable. *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973). "[I]n the case of a full custodial arrest of an 'occupant' or 'recent occupant' of a vehicle, the police may search the

passenger compartment of the vehicle as 'a contemporaneous incident' of that arrest." *United States v. Hrasky*, 453 F.3d 1099, 1101 (8th Cir. 2006) (**citing** *New York v. Belton*, 453 U.S. 454, 460 (1981)). The search includes the examination of "the contents of any containers found within the passenger compartment." *United States v. Grooms*, 506 F.3d 1088, 1090 (8th Cir. 2007). Because Uriel, as a recent occupant of the Impala, was arrested for possessing the meth pipe, the investigating officers were justified in searching the passenger compartment of the Impala. This search incident to Uriel's arrest yielded contraband including a scale and suspected illegal substances in the Impala where Deleon had been seen moving his hands.

"A warrantless arrest complies with the Fourth Amendment when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008). The contraband found during the search of the Impala provided the investigating officers with probable cause to arrest and thoroughly search Deleon incident to his arrest. The search of Deleon yielded a handgun in his waistband. Under these circumstances, the court finds the search of the Impala and the search of Deleon to be reasonable and lawful. Accordingly,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

The motion to suppress (Filing No. 22) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 3rd day of February, 2009.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge